UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


LEWIS MARTIN MOTON, JR.,

              Plaintiff,

v.                                 Case No. 8:09-cv-1986-T-33TBM

SERGEANT K. WALKER,

              Defendant.

_____


# O R D E R

This cause is before the Court on Defendant Walker's motion for summary judgment (Doc. 51). Because the evidence, viewed in the light most favorable to Plaintiff Moton, presents no genuine issue of fact and compels judgment as a matter of law, Walker's motion for summary judgment will be **granted.**

## PLAINTIFF'S ALLEGATIONS

On May 4, 2011, Plaintiff Moton filed his court-ordered second amended 42 U.S.C. § 1983 civil rights complaint on which he is proceeding. (Doc. 32). At the time he filed his complaint, Moton was incarcerated at Wakulla Correctional Institution. Moton is now incarcerated at Lake Butler Reception and Medical Center, Lake Butler, Florida.

**In the "Statement of Complaint Section" of the civil rights form, Moton alleges:**

> The culmination of retaliatory aggression against me at Hardee C.I. for filing grievances led to September 22, 2005, where Sgt. Walker targeted me with an unwarranted strip search, never accusing me of

possessing contraband, and wore a lewd, sadistic, malicious smile on his face, while abusing his authority intentionally to offend me and jeopardize my conduct in order to effect retaliatory transfer in violation of my 4th, 8th, and 14th Amendment rights under the U.S. Constitution.

**In support of his claim, Moton contends:**

While at Hardee C.I. from approximately 2004 to 2005 I was repeatedly attacked in retaliation for filing grievances and requests. The abuse started around October 2004, with Captain Cowart writing me two false disciplinary reports (D.R.'s), one for disrespect to officials after Cowart received a grievance from me written in all capital letters, and a second D.R. for spoken threats after I responded, "My lawyer'll be hearing about this," when Cowart asked if I had anything to say before being placed in administrative confinement. SEE EXHIBIT "A." While in confinement, I was savagely attacked by Officer D. Slaughter in retaliation for the Cowart incident. On the very day I was taken to D.R. Court for Cowart's D.R.'s, Officer Slaughter, using handcuffs as a weapon, attempted to break my left wrist for no reason at all after I put my hands out of the food flap to be handcuffed. Robert Rivers, my roommate, witnessed this. Officer Slaughter wrote me 2 false D.R.'s and I was released from confinement in January 2005. After my release I was assaulted and battered by Sergeant Farmer, January 2005, and I expressed my wish to press charges. As a result of expressing my desire to press charges against Sgt. Farmer I was abducted from the law library by staff and taken to confinement per Captain A.B. Conner. I asked Captain Conner why he was doing that to me and he said, "You shouldn't have sent that request." I was then arbitrarily confined under Protective Management status and upon challenging that illegal placement my status changed to under investigation by various staff. After that, I was denied requests and grievance forms, then limited to receiving only 5 per day on the 8 to 4 shift only. Once released, a new Colonel (Collins) came and on August 23, 2005, he called me to his office and asked if I needed a pen-pal due to requests he received from me and tried to intimidate me to scare me off with Lieutenant Deen present. Exactly 30 days later, on September 22, 2005, while at breakfast, Colonel D. Collins entered the chow hall and saw me then looked at me glaringly as if he could kill me. That look sent shivers down my spine. Later, the same day, but on the next shift (4-12) Sergeant Walker came to my cell, after locking the Quad of the dorm down, for a strip search of my roommate and I [sic].

Sgt. Walker strip searched my roommate while I stood outside our cell, then called me to strip out while my roommate stood outside. I took off my clothes and was completely naked before Sgt. Walker who

examined my hair, behind my ears, my mouth, my penis, my scrotum, and bottoms of my feet, and then ordered me to bend over at my waist, spread my "butt cheeks" and cough. I complied and was ordered to do it again, which was very strange (this has never occurred before at any time I was incarcerated), but I complied. Sgt. Walker ordered me again for the third time to bend over at my waist and spread my "butt cheeks," after I had done so the second time. Knowing Sgt. Walker saw that I had nothing hid [sic] in my rectum the disgusting feeling that I was being sexually abused and was going to continue to be sexually abused unless I stopped it came over me. I then told Sgt. Walker, while I was putting my clothes back on, that I knew what he was doing and why he was doing it as I'd seen Colonel Collins that same early morning and how he looked at me. Sgt. Walker smiled a sickening grin and his eyes lit up as he said, "I don't know what you're talking about." Sgt. Walker then handcuffed me and took me to confinement. I was written 2 false D.R.'s. No incident occurred with the strip search in confinement.

While in confinement Colonel Collins came to my cell door and I told him that was real slick what he had done by sending Sgt. Walker to sexually abuse me. He smiled and said, "Yeah, it's hard to get out of somebody playing with your asshold." He then laughed and walked off. The Institutional Classification Team then recommended me for Close Management, which was for "excessive D.R."s (4)" which Tallahassee Central office approved and I was shipped to Charlotte Correctional Institution for "CM3" six (6) months. This could not have been done to me except by Sgt. Walker agreeing to do the "dirty work," which is why I am suing him in his individual capacity for sexually abusing me for no reason, but to cause me harm by jeopardizing my good conduct, violating my Fourth, Eighth, and Fourteenth Amendment rights in violation of the U.S. Constitution with sadistic and malicious intent under color of state law.

**As relief, Moton seeks:**

Nominal and punitive damages in the amount of $50,000 and $150,000, respectively, and all court costs, attorney fees, copying costs and legal fees to be paid by Defendant Walker; as well as injunctive and declaratory judgment for Plaintiff to file complaints without retaliation.

## DEFENDANT'S STATEMENT OF MATERIAL FACTS

On September 22, 2005, Defendant Walker was employed by the Florida Department of Corrections ("FDOC") as a Sergeant at Hardee Correctional Institution

located in Hardee County, Florida. (Exhibit A, Sworn Declaration of Kenneth Walker, ¶ 4). On September 22, 2005, Walker conducted a routine cell search for contraband of the cell of Moton and Moton's cellmate. (Exhibit A, ¶ 5). The search was part of Walker's normal duties. (Exhibit A, ¶ 5). At that time, Walker conducted a strip search of Moton and his cellmate, also a routine event. (Exhibit A, ¶ 5).

The strip search that was conducted was pursuant to normal FDOC procedures. (Exhibit A, ¶ 6). In conducting the strip search, Moton was ordered to bend over, spread his buttocks and cough. (Exhibit A, ¶ 6). Moton refused to properly comply with this order. (Exhibit A, ¶ 6). After the order was repeated, Moton continued to refuse to comply, and then stated: "Fuck this shit, I ain't doing it." (Exhibit A, ¶ 6). Moton was placed in restraints to be taken to confinement. (Exhibit A, ¶ 6). Moton then stated: "I've got a natural life sentence, I've got nothing but time, and I'll get you." (Exhibit A, ¶ 6). As a result of Moton's conduct, he was given disciplinary reports for disobeying a verbal or written order and for spoken threats. (Exhibit A, ¶ 6).

Walker did not have any discussion with Colonel Collins regarding Moton's strip search on September 22, 2005. (Exhibit A, ¶ 7). Colonel Collins did not give Walker any directions to conduct a strip search of Moton "or as to the manner of the search." (Exhibit A, ¶ 6). The incident in question was a routine strip search where Moton simply refused to comply with the procedure for a strip search. (Exhibit A, ¶ 8). Moton's allegations that the manner of the search was improper or that Walker was attempting to harass Moton are untrue. (Exhibit A, ¶ 6).

The matter at issue in this case was assigned to the FDOC's Office of the Inspector General ("OIG") for investigation. (Exhibit B, Investigative Report, Office of the

Inspector General, p. 1). The OIG eventually determined that there was no evidence to support any allegations of improper conduct by staff. (Exhibit B, p. 1).

Included within the OIG Report are various exhibits concerning the incident. An incident report was prepared reflecting that Moton did not properly comply with orders Walker gave at the time of the strip search on September 22, 2005. (Exhibit B, p. 4).[1]  In an affidavit provided to the OIG, Moton's cellmate, Michael Grider, states he did not feel Walker took any action as part of the strip search that was "outside of normal procedure"; that to his knowledge there was no misconduct by Walker; and that he (Grider) did not see or hear of any sexual harassment of Moton. (Exhibit B, p. 6).

In addition, Correctional Officer Bryant, who conducted the cell and strip searches with Walker, provided an affidavit stating that Moton refused to comply with the proper procedure for the strip search. (Exhibit B, p. 7). Further, Bryant states that Walker at no time "went out of following proper procedures."

_____

[1] The OIG report contains the following information about the search:

Inmate Lewis Moton submitted a sworn Affidavit indicating he and his cellmate **were locked down for count**.  Sgt. Walker and Officer Bryant came to their cell to conduct a search.  Sgt. Walker conducted a strip search of this [sic] cellmate.  Sgt. Walker then conducted a strip search of him.  He performed all the necessary acts for the strip search, then Sgt. Walker ordered him to bend over and spread his butt cheeks and to cough.  He did as ordered, but squatted and cough [sic]. Sgt. Walker ordered him to bend over at his waist and to cough.  He did as ordered by again squatted [sic] and cough [sic]. Sgt. Walker again ordered him to bend over at the waist and spread his butt cheeks and cough.  He then stated to Sgt. Walker, that he felt this was sexual harassment. He was ordered to get dressed and was then handcuffed and written two (2) Disciplinary Reports. (Emphasis added).

Moton was given a Disciplinary Report for Disobeying an Order arising from the incident. (Exhibit C). Moton was convicted of this infraction, given 30 days in confinement and lost 60 days of gain time. (Exhibit C, p. 2). The evidentiary basis for the DR is set forth in the Report. (Exhibit C).

Moton was also given a Disciplinary Report for Spoken Threats. (Exhibit D). Moton was convicted of this infraction, given 30 days of confinement and lost 90 days of gain time. (Exhibit D, p. 2). The evidentiary basis for the DR is set forth in the Report. (Exhibit D).

Moton appealed the ruling on the Disciplinary Report for Disobeying an order by filing a Petition for Writ of Mandamus in the state trial court. (Exhibit E). That Court denied Moton's Petition. (Exhibit F). The state trial court found that Moton's Disciplinary Report was based on evidence in the record. (Exhibit F, p. 4). Moton appealed and the state district court of appeal per curiam affirmed the denial of relief. (Exhibits G & H).

## STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." *Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed.R.Civ.P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir.2004).

The standard for creating a genuine dispute of fact requires courts to "make all reasonable inferences in favor of the party opposing summary judgment," *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc), not to make all possible inferences in the non-moving party's favor. Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.' " *Pittman v. Tucker*, 213 Fed. Appx. 867, 870 (11th Cir.2007) (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002)). Rule 56(e) provides that an affidavit submitted in conjunction with a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006) (citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1225 (11th Cir.1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. *Beard*, 548 U.S. at 529 (citations omitted); *Shotz v. City of Plantation, Fl.*, 344 F.3d 1161, 1164 (11th Cir. 2003). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, [the court's] inferences must accord deference to the views of prison authorities." *Beard*, 548 U.S. at 530. "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.' " *Cuesta v. School Bd. of Miami-Dade County,* 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir.1997) (stating that plaintiff's "conclusory assertions ... in the absence of supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout,* 65 F.3d 912, 916 (11th Cir.1995) (finding that inmates failure to produce "nothing, beyond his own conclusory allegations" to demonstrate defendant's actions "motivated by retaliatory animus" warrants grant of summary judgment in favor of defendant). In the summary judgment context, the Court must construe pro se pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir.2002).

## DISCUSSION

Moton's complaint arises from a factual scenario concerning what is termed a visual body cavity search. A visual body cavity search is a strip search that includes the visual examination of the anal and genital areas. Florida Administrative Code 33-602.204(2)(e)(3).

At the time of the incident, prison inmates had to submit to visual body cavity searches without individualized suspicion. *Padgett v. Donald*, 401 F.3d. 1273, 1278 (11th Cir. 2005). A reasonable visual body cavity search of a pretrial detainee without probable cause does not violate the Fourth Amendment. *Bell v. Wolfish*, 441 U.S. 520-558-560 (1979).

There is nothing inherently unreasonable about requiring visual body cavity searches. *Powell v. Barrett*, 541 F.3d 1298, 1305-1306 (11th Cir. 2008). However, searches of the sort raised in Moton's Complaint must be conducted in a reasonable and non-abusive manner. *Evans v. Stephens*, 407 F.3d. 1272, 1281 (11th Cir. 2005) (no requirement that searches be delicately conducted in the least intrusive manner, as long as they are conducted in a reasonable manner).

A review of the facts of *Evans* describes a search conducted in an abusive, unreasonable manner:

> . . .Plaintiffs were taken to and searched in an abnormal place (thus, capable of exciting more fear): a broom closet or supply room, not a dedicated search cell, medical examination room, or even a bathroom. *See Justice v. Peachtree City*, 961 F.2d 188, 193 (11th Cir.1992) (approving of private room); *Skurstenis v. Jones*, 236 F.3d at 678, 682 (11th Cir. 2000) (bathroom). Little respect for privacy was observed. Each Plaintiff was forced to disrobe, ridiculed, and penetrated by an object in front of the other. *See Justice*, 961 F.2d at 193 (noting that arrestee and officers were the only people in room).
>
> The physical aspects of the searches are also disturbing. Unnecessary force was used. Evans was thrown into Jordan, causing both men to collapse. As Jordan tried to stand back up, Officer Stephens hit him with a baton-like object. It matters that a body cavity search was undertaken. In addition, while conducting the search, Stephens inserted the same baton or club -- without intervening sanitation -- in each Plaintiffs' anus and used the same baton or club to lift each man's testicles. Apart from other issues, this last practice is highly unsanitary. *See Bonitz v. Fair*, 804 F.2d 164, 173 (1st Cir.1986)

> (acknowledging non-hygienic manner of search) *overruled on other grounds by Unwin v. Campbell*, 863 F.2d 124, 128 (1st Cir.1998), *overruled by Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

*Evans,* 407 F.3d at 1281.

Moton does not allege any specific facts that made Walker's visual body cavity search egregious.  Florida Administrative Code 33-602.204(2)(e)(3), concerning Searches of Inmates, expressly states:

> When a strip search is to be made, the inmate will remove all clothing, place it in a pile, then move away from it a few paces. The search will include hair, ears, and mouth (dentures to be removed). The entire body will then be checked including armpits, hands, pubic region, between the toes, soles of the feet, rectum and inner portions of the legs.

Accordingly, the inspection of Moton's entire body was standard procedure.  The location of the search, in Moton's cell, was entirely acceptable. The only issue of unreasonableness Moton has raised is his allegation that he was required to spread his buttocks a total of three times.

Other courts have concluded that such requirements do not rise to the level of a constitutional violation. In *Fillmore v. Page*, 358 F.3d. 496, 505 (7th Cir. 2004), the Court held that the fact that the Plaintiff was forced to spread his buttocks five different times during a strip search did not mean that the search was conducted in a humiliating manner. In *Delarosa v. Texas*, 2009 WL 2870061 (N.D. Tex. 2009), the Plaintiff alleged that he was required to spread his buttocks three times during a strip search. The *Delarosa* Court specifically held that, "[P]laintiff's allegations, accepted as true, fail to demonstrate that being required to spread his buttocks three times instead of one time was unreasonable." *Id.* In *Williams v. Higbee*, 2001 WL 34376853 (W.D. Wis. 2001), the Plaintiff alleged that

he was required to allow an examination between his buttocks four or five times. Notwithstanding his allegations concerning how the search was conducted, the court dismissed his claim pertaining to the strip search. *Id.*

Accepting the facts as alleged by Moton as true, Moton has not shown that the search was unnecessary[2] or that it was conducted improperly and this claim has no merit.

<u>Moton Not Subjected to Sexual Abuse</u>

Moton's claim that Walker's search rose to the level of sexual abuse is spurious. In its decision in *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006), the Eleventh Circuit joined other circuits in holding that "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment."

There are two components to a sexual abuse claim: (1) the injury must be objectively, sufficiently serious (more than de minimis ); and (2) the corrections officer must have a sufficiently culpable state of mind. *Boxer*, 437 F.3d at 1111. Cases where the injury requirement has been met involve some type of intrusive sexual contact -- acts beyond mere touching, and allegations of pain. *Schwenk v. Hartford,* 204 F.3d 1187, 1198 (9th Cir. 2000) (demand for oral sex accompanied by grabbing and pushing inmate up against bars); *Smith v. Cochran*, 339 F.3d 1205, 1208 (10th Cir. 2003) (forced oral sex and sexual intercourse); *Little v. Walker*, 552 F.2d 193, 197 (7th Cir. 1977) (rape); *Styles v. McGinnis*, Case No. 0-1415, 2001 W L 1667273, *2 (6th Cir. Dec. 26, 2001) (forced rectal examination); *Liner v. Goord*, 196 F.3d 132, 135 (2nd Cir. 1999) (intrusive body cavity search). Otherwise, courts have found no constitutional violation. For example, there was

---

[2] "In a sworn tape-recorded interview, Sgt. Walker indicated he and Officer Bryant went to search Inmate Moton and Garder's cell for contraband." (Exhibit B-3).

no Eighth Amendment violation where an inmate complained about sexual comments by a female officer, who also pressed herself up against him in a sexual manner, because the inmate did not allege any pain or injury. *Boddie v. Schnieder*, 105 F.3d 857, 861 (2nd Cir. 1997). *See also Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (sexual harassment to be actionable "must involve pain of some type to constitute an injury").

Moton's only sworn evidence of sexual abuse is that during the routine visual body cavity search, Walker wore a lewd, sadistic, malicious smile on his face -- "he had a sickening grin and his eyes lit [sic] up" -- and that Walker three times ordered Moton to bend over, spread his butt checks and cough. Moton states that he did not obey Walker -- he squatted, rather than stood to execute the procedure.

Although Moton alleges that Collins sent Walker to sexually abuse Moton and that Walker did sexually abuse Moton, Moton provides no support for this contention other than his own statement. Moton's recitation of the facts does not demonstrate that Walker abused his authority intentionally to offend Moton and jeopardize his good conduct in order to effect a retaliatory transfer.

Moton has not alleged facts to show that his injury (if any) was more than de minimis or that Walker had a culpable state of mind. Walker's actions did not rise to the level of sexual abuse.

<u>No Claim of Retaliation</u>

Moton does not raise a First Amendment retaliation claim. Given that Moton pursued a retaliation claim in another lawsuit (See Doc. 32, p. 5), he is familiar with the factual basis necessary to allege retaliation. However, liberally construing the complaint,

it appears that the Moton is attempting to suggest a connection between the strip search and Moton's interactions with other FDOC staff.

Walker is responsible only for his own actions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Moton's interactions with other officers at the correctional institution are not relevant to this case. In any event, a review of Moton's allegations reveals they do not support a claim of First Amendment retaliation. The test for retaliation is an objective one, and allegations of a retaliatory motive must be more than speculative.

Moton must present evidence that Walker was subjectively motivated to retaliate against him. *Smith v. Mosley* , 532 F.3d 1270, 1278 (11th Cir. 2008). However, Moton cannot defeat summary judgment based on statements that are inadmissible hearsay, such as Moton's claim that Collins sent Walker to sexually abuse Moton. (See Doc. 32, p. 11); *Macuba v. DeBoer*, 193 F.3d 1316, 1323 (11th Cir. 1999). The Court must discount the statements that Moton attributes to Collins because Collins is not a Defendant in this lawsuit, and his statements are hearsay. Clearly, Moton is offering Collins' statements for the truth of the matter asserted. Since Moton cannot show that Collins directed Walker to conduct the strip search, Moton cannot show that Walker's comment, "I don't know what you are talking about," is evidence of improper subjective intent regarding the visual body cavity search. (Doc. 32, p. 11). Walker's statement is not sufficient to demonstrate that Walker had a retaliatory motive in conducting the visual body cavity search, and any alleged claim of retaliation has no merit.

Moton Cannot Show that his Disciplinary Reports Were False

Moton claims that he was given false Disciplinary Reports ("DR's"). This claim has no merit. (Doc. 32, p. 11). In *O'Bryant v. Finch*, 637 F.3d 1207, 1215-1216 (11th Cir.

2011), the Eleventh Circuit stated that a Plaintiff could not proceed on a retaliation claim that a DR was falsely given when Plaintiff received due process and was found guilty of the conduct at issue in the DR.

Moton has not alleged that the DR's in question have been overturned. In support of his motion for summary judgment, Walker filed copies of Moton's state court mandamus petition challenging his DR for disobeying an order and the order of the state trial court denying the mandamus petition. (Exhibits E & F). The denial of relief was affirmed by the state district court of appeal. (Exhibits G & H). Moton has litigated to a conclusion his legal challenge to this DR, and the DR is valid.

*O'Bryant v. Finch,* 637 F.3d at 1215-1216 states that the Plaintiff must establish that the DR's in question were not sustained to support a retaliation clam:

> The Eighth Circuit explained that "a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Hartsfield*, 511 F.3d at 829. FN15 The Eighth Circuit's conclusion essentially rests on these principles: (1) the inmate was charged with conduct that is not protected speech but actually violates a prison rule; and (2) the inmate is found guilty of the actual behavioral violation after being afforded adequate due process in the prison setting.

> > FN15. The Eighth Circuit added that "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Hartsfield*, 511 F.3d at 831.

> We agree with these principles too. If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report. Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that

are decided by the disciplinary panel. In the particular circumstances here, O'Bryant has suffered adverse action (here 30 days' disciplinary confinement) because he actually violated the prison rules and not because of his earlier grievances. To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance. Because he was guilty of the disciplinary charges resulting in the disciplinary harm at issue, O'Bryant's retaliation claim fails.

In the present case, evidence was presented to support both DR's. (See Exhibits C, D & F). Moton has not established that the DR's were not sustained.

Compare *Moton v. Cowart*, 631 F. 3d 1337, 1339-40 (11th Cir. 2011) where the Eleventh Circuit reversed the entry of summary judgment for the Defendant prison official, Captain Cowart:

> Retaliatory disciplinary conduct was also an issue in *Moton v. Cowart*, 631 F.3d 1337 (11th Cir.2011), where this Court reversed the entry of summary judgment for the Defendant prison official, Captain Cowart. Inmate Moton had filed an October 30, 2004 grievance in which he wrote in large capital letters: "REMEDY: RETURN MY REQUEST DATED 10–15–04 WITH APPROPRIATE ANSWER AS REQURED [sic]." *Id.* at 1339–40. Upon receipt, Defendant Cowart told Moton she would file a disciplinary report for disrespect. *Id.* Cowart contended Moton then told Cowart that " 'she would be hearing from his lawyer' " and "[y]ou will answer these grievances." *Id.* at 1340 (quotation marks omitted). Cowart filed two disciplinary reports alleging Moton violated prison rules prohibiting (1) "disrespect to officials ... by means of words, gestures and the like" and (2) "making spoken, written or gestured threats against prison officials." *Id.* (quotation marks and brackets omitted). The disciplinary hearing team found Moton guilty, imposing disciplinary confinement and a loss of 60 days' gain time. *Id.* In **Moton's appeal, the FDOC found him not guilty because Cowart's statement of facts did not support the charge.** *Id.*

Finally, It is clear on the record that Moton would have received the DR's in question regardless of any alleged retaliatory animus of Walker. (See Exhibits C & D).

<u>Walker Is Entitled to Qualified Immunity</u>

Qualified immunity offers: ". . . complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982)). Qualified immunity allows government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Questions regarding qualified immunity should be resolved at the earliest possible point in the litigation of a case. *Amnesty Intern., USA v. Battle*, 559 F.3d 1170, 1179 (11th Cir. 2009).

The defense of qualified immunity serves important public policies. *Ray v. Foltz*, 370 F.3d 1079, 1082 (11th Cir. 2004) (citing *Richardson v. McKnight*, 521 U.S. 399. 408-11(1997)). Qualified immunity protects: "'. . . government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates were not deterred by the threat of damage suits from entering public service.'" *Id.* (citing *Richardson* at 408). The doctrine provides immunity from suit, and is not just to be considered as a defense to be raised at trial. *Id.* The defense of qualified immunity protects a government official from both having to stand trial and endure the burdens of litigation, including pretrial discovery. *Elliott v. Perez*, 751 F.3d. 1472, 1478 (5th Cir. 1985); *See Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004).

To be entitled to qualified immunity, a defendant must first establish that he was acting within the scope of his discretionary authority. *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007). Here, it is apparent from the face of the complaint that Moton has

sued Walker for performing official duties within the scope of his discretionary authority as an employee of the Florida Department of Corrections. Moreover, in his Sworn Declaration, Walker demonstrates that all actions were undertaken as part of his official duties. (See Exhibit A).

Once the defendant has established that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* When evaluating a claim for qualified immunity, a court must determine: "(1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right, and (2) whether, under the facts alleged, there was a violation of "clearly established law." *Pearson v. Callahan*, 555 U.S. 223 (2009). Courts are no longer required to address the two prongs of this test in any particular order. *See Id.* (modifying *Saucier v. Katz*, 533 U.S. 194 (2001).

As to the second prong, the general rule is that a government official is entitled to qualified immunity from a civil rights action: ". . . unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d. 1275, 1282 (11th Cir. 2002). For example, the court in *Webb v. White*, 2008 WL 4889116 (M.D. Fla. 2009), found that qualified immunity barred a claim concerning the strip search of a male inmate conducted within the sight of a female guard. The Court held the actions that allegedly occurred were not established as being clearly unlawful. *Id.*

The facts alleged in this action do not establish the violation of a right whose contours were sufficiently clear that Walker would have known, in 2005, that his actions were unlawful. As discussed previously, in *Evans v. Stephens*, 407 F.3d. 1272, 1281 (11th Cir. 2005), the officer was alleged to have engaged in numerous acts which made the search unreasonable. Nothing in that decision would place Walker on notice that requiring Moton to go through a procedure three times constituted a constitutional violation. That Walker was not on notice is emphasized by the cases cited above: *Fillmore v. Page*, 358 F.3d. 496, 505 (7th Cir. 2004); *Delarosa v. Texas*, 2009 WL 2870061 (N.D. Tex. 2009); *Williams v. Higbee*, 2001 WL 34376853 (W.D. Wis. 2001).

In addition to the qualified immunity defense regarding the manner of the strip search, Walker is entitled to qualified immunity for any First Amendment retaliation claims Moton is asserting in this action. In *Thompson v. Hall*, 426 Fed.Appx. 855, 860 (11th Cir. 2011), the Eleventh Circuit specifically held that qualified immunity applies to a claim for First Amendment retaliation unless it can be demonstrated that the law was clearly established that the actions in question would deter a person of ordinary firmness from engaging in protected speech. Moton has not alleged any precedent that would have placed Walker on notice that Walker's conduct regarding the visual body cavity strip search violated Moton's First Amendment rights.

It is Morton's burden to overcome the defense of qualified immunity by identifying a materially similar case where the defendant's actions were deemed unlawful. *Lloyd v. Van Tassell*, 318 Fed.Appx. 755, 758 (11th Cir. 2009); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1301 (11th Cir. 1998). Moton has not met this burden. Because the visual body cavity search occurred in 2005, no holding in any later case law would have

alerted Walker that his action in conducting a **routine** visual body cavity search was unconstitutional.

<u>Claims for Declaratory and Injunctive Relief Are Moot</u>

Moton seeks declaratory and injunctive relief: "injunctive and declaratory judgment for Plaintiff to file complaints without retaliation." Moton is no longer incarcerated at Hardee Correctional Institution and Walker retired from the FDOC on May 31, 2011. Therefore, his claims are moot. *McKinnon v. Talladega County*, 745 F.2d 1360, 1363 (11th Cir.1984) (Inmate's transfer to a different jail moots claim for declaratory and injunctive relief against the Defendant.).

It is an axiomatic principle of federal court jurisprudence that a party must have an actual case or controversy to proceed with their case. "Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.' " *Mingkid v. U.S. Att'y Gen.*, 468 F.3d 763, 768 (11th Cir.2006) (citation omitted). "The doctrine of mootness derives directly from the case-or-controversy limitation, because an action that is moot cannot be characterized as an active case or controversy." *Id.* (citation omitted). Accordingly, we may not entertain an appeal unless there is a present case or controversy, that is, "an actual dispute [that] continues to exist between the parties." *Bourgeois v. Peters*, 387 F.3d 1303, 1308 (11th Cir.2004). On the other hand, "[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Mingkid,* 468 F.3d at 768 (citation, alteration, and internal quotations omitted).

Therefore, "if events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the

case is moot and must be dismissed." *Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir. 2001). In fact, mootness is considered jurisdictional, thus requiring dismissal of the case. *Id.* Correspondingly, a decision by the court on the merits of a moot case is considered an impermissible advisory opinion. *Florida Ass'n of Rehabilitation Facilities*, *Inc. v. State of Fla. Dept. of Health and Rehabilitative Services*, 225 F.3d 1208, 1217 (11th Cir. 2000).

Given that Walker retired from the FDOC on May 31, 2011, he can no longer interact with the Moton as security staff of the Department. Accordingly, there is no proper basis to issue an order preventing Walker from taking action against Moton. For this issue, there is no further, meaningful relief that can be given, and this claim is moot. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

<u>Failure To State Claim for Compensatory or Punitive Damages</u>

Moton seeks both compensatory and punitive damages. (Doc. 32, p. 12). However, Moton does not allege that he suffered any physical injury from the alleged incident. Under 42 U.S.C. § 1997e(e), part of the Prison Litigation Reform Act, a Plaintiff must make a showing of a physical injury which is more than de minimis before being entitled to compensatory or punitive damages. *Al Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011). Moton's allegations do not reflect that he suffered any physical injury. Therefore, he is not entitled to compensatory or punitive damages.

**MOTON'S REPLY**

Moton emphasizes Florida Administrative Code 33-602.204(3)(b) which governs body orifice and cavity searches, not visual body cavity searches. Moton does not allege that Walker attempted to perform a body orifice or cavity search. None of the sections of

the Florida Administrative Code related to body orifice and cavity search is applicable to the visual body cavity search alleged in this case.

Moton also cites FDOC Procedure 602.018. In part, that procedure states that Inmates will be searched . . . "any time that the inmate is suspected of carrying or concealing contraband on his/her person." In his sworn declaration, Walker states that he searched Moton and his cellmate for contraband.

## CONCLUSION

Because the evidence, viewed in the light most favorable to Moton, presents no genuine issue of fact and compels judgment as a matter of law, Walker's motion for summary judgment will be granted.

Accordingly, the Court orders:

That Walker's motion for summary judgment (Doc. 51) is granted. The Clerk is directed to enter judgment against Moton and to close this case.

ORDERED at Tampa, Florida, on February 6, 2012.

_Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Lewis Martin Moton